May it please the Court. Rex Sharp for Appellant Carl White, Trust. The sold gas and the used gas clauses are written separately in this case and they're interpreted separately in the Randall case, the Texas Supreme Court case that unanimously held that gas that was used had to be paid for. The market value at the wellhead is not in conflict with that ruling. Used gas can be paid on a net basis just like sold gas. Indeed, had the used gas been sold to the midstream providers, it would have been paid on a sold basis and would have received the net value that it so richly deserved. Used gas never has been and is not in this case a post-production cost. The controlling law here is the Randall case. Of course, it addressed that this used gas was on a novel question before the Texas Supreme Court. There was no need to look to any prior cases. That was a novel question to the Texas Supreme Court and they decided it. If there is either a FOLU, free on lease use clause, or an OLUG, off lease use of gas clause, then you have to pay the royalty for that used gas. Is that what happened in the Anderson Living Trust case in the Tenth Circuit? They had to pay the royalty on the used gas. The Energen case or the Anderson Living Trust case in the Tenth Circuit? Yes. Some people call it Energen. Yes. That's the case they relied on. It was a very interesting case because they rejected the New Mexico part of the case and they held in favor of the Colorado part of the case. The reason they did that was because the New Mexico case relied on the North Dakota case which gave a very expansive reading to the FOLU clause and allowed anything that was going to be used essentially for furtherance of the lease, it could be deducted. Of course, anything that's used in the post-production activities, as defendant calls it, would qualify under that rubric. Under the Colorado law, of course, that was not the case and that's the law that Texas adopted. The market value at the well case is interesting that it's been brought here on this particular issue and the reason is, in the Randall case, most of the cases that were considered by the Randall court were market value at the well leases. Bice was a case that they considered, Lyons was a case that they considered, and some of the Energen cases, the Anderson Living Trust case versus Energen, were also market value at the wells cases. The Randall's court had no problem with that issue. So consequently, it's not surprising that the market value at the well valuation would not change what was held in Randall. Randall set forth the rule that market value at the well does not trump or eliminate other express lease clauses. In fact, you have to read those express lease clauses so that they give effect to the entirety of the lease. It can't be free use of the lease. The free use clause essentially says it's free on the lease, which means, of course, it's not free if it's off the lease. And the OLUG clause... Okay, so you're right that Hillcorp should be deducting consumed gas as a cost in the Workbeck method instead of deducting consumed gas from the number of units of gas for which they owe you royalties, assuming that you're correct in your theory. Does that save them money or does it not matter which variable you deduct the cost of the gas from? I guess I'm asking, are you always going to have damages under your theory or sometimes you're not even... It's going to be a wash or benefit to your client? Yeah, so I think there's two or three different issues buried within that, I think. First, the issue of whether the... I'm sorry, was that me? The market value at the well issue is separate and distinct from the OLUG and FOLU clause and I think Chief Justice Rosenthal, in her opinion, made clear that they were separate. Then the second part of that issue is, of course, whether there is... Whether market value at the well allows you to deduct the, what I would call, off-lease use of gas. I think defendant might want to call it post-production use of gas. Whatever you want to call it, used gas is not a post-production cost and it's not a post-production cost in general and it's not a post-production cost in the case on the record before the court. The handout that I provided the court, I think, is illustrative of that point. Would it be more accurate to say that it is a post-production cost but they have to pay  They have to pay for... What I'm saying? Yeah, so post-production costs can be, in fact, deducted but... Right, in the course of getting to the market value of the well. So, the net issue is... They're still getting the gas. They still have to pay for it. They have to pay for everything that comes out of the well and because of this lease, they have to pay for everything that comes out of the well, either on the sold side on a net-backed basis or on the used side on a net-backed basis. But they don't get it for free. The only place they get it for free is where parties agreed to give it to them for free, which was on the... The on-lease clause, which doesn't... That's exactly it. Is it undisputed that this is about off-lease use and not on-lease? Excuse me, Your Honor? Is it undisputed that here we're not applying the on-lease clause because this is off-lease? Yeah, so this particular case has both of those clauses in it. It would only need to have one or the other, but where both exist, then this particular result would be that whether you sell it at the tailgate of a processing plant, you're going to pay net-back all the way back to the well, or whether you sell it, let's say, to a midstream service provider before you even get to the processing plant, or you even give that to the midstream provider rather than sell it, you still have allowed that use and you still have to pay that net value. So the upshot is that you have to pay for everything that comes out of the well because that's the way the lease provides it. It's pretty simple, and you can see it on this chart that I provided to the court. This is what Hillcourt provides, it's a check stub, and it's what they provide to the royalty owners in this case. I should point out that the highlighting is mine, I did that to try to make it a little more readable. I'm not sure I was successful in that, and the calculations are mine down at the bottom just to illustrate my point. The first point is they're paying on gas and what the P-P-R-O there is plant products. That's what they're paying on, and they're not paying on any off-lease use of gas. They could have a separate line there and pay for the off-lease use of gas, it is something that's measured, it's just not anything that's ever valued and then deducted in post-production cost. On this record, in particular, there's only two things that are post-production costs and they're shown there and highlighted in yellow. The gas transportation flat amount and the gas processing. There's nothing in there that shows that they're deducting used gas that's off the lease, and they're not, and they're careful about it, but it's just not something that is ever deducted out of post-production cost. Hillcorp is very careful to say that it could deduct the used gas, or that it might. Not that it ever has, and not that it is now, just that it would like this court to all of a sudden rule for the very first time, not on these facts, because these facts don't show that they're making any deductions for used gas on post-production costs, but on the facts, as was done in the Piney Woods case, but they would say, we want it as a matter of law. We don't even want to show the court the facts, because if they did, they wouldn't be able to show the court that they've ever deducted post-production use or used gas off the lease as a post-production cost. What specific relief do you seek from us today? What specific relief do you seek from us today? The specific relief is that I want the court to reverse the district court and return this case to the trial court, the district court, for determination as to what is the net value of the used gas. We contend the net value of the used gas, as you can see on my exhibit here, is the same, or essentially the same, as the net value of the sold gas at the well. So it's a simple mathematical equation I put across the top there on my exhibit, gross minus post-production cost equals net. And if you take that down to per quantity, that's approximately $3 of sold gas is getting a net value of $3. And we're contending, essentially, that it should be $3 that we should receive. Defendant, as I understand it, says, no, it should be $0. And we have a hard time understanding how the gas that comes out of a well at the exact same time, under the exact same lease, with the exact same valuation point, market value at the well, somehow gets $3 when it's sold and $0 when it's used off the lease. That's our problem. And we think that the court here should reverse that, reverse the decision below, and return it for a valuation as to what the net value is. Can I try to simplify this another way? This is admittedly quite a bit of arcana in this case, and I want to make sure both sides hear at least how I understand it, so you can tell me if I'm right or wrong. I think of this as a very simple three-part formula. You've got, in terms of what's owed to the property owners, the royalty, and that's undisputed, right? One-eighth. It's one-eighth times the per-unit value, which here is, I think, undisputed, market price at the well. And then the third variable is how many units. Does that all sound right so far? Yes. As I understand it, the dispute then, essentially, you can complicate it, I'm sure, but essentially it's, when you're talking about the number of units, is it a total amount of gas that the oil company is taking from it, or is it only that amount of gas that is actually sold as opposed to used to produce, I guess, to power the machinery? Your position is that, no, it's all gas removed, and they want to deduct from the gas the part that's used to power the machinery. That's basically the fight? Yeah, that's essentially it, Your Honor. We believe that all gas should be paid for, not just the sold gas that's paid for. They believe only the sold gas should be paid for because the used gas should be free. If that were the case, then they could use 99% of our gas from the well to be used in the field, and we'd only get paid for 1%. That's not the way it's supposed to be, and we wouldn't want the incentives to be jacked that way so that they would consider using all of our gas and never paying for it. There simply here is just no situation where the used gas could be considered a post-production cost. Used gas is not a cost. Cost is an expense. Used gas is actually an asset that comes from the mineral estate. It's really the inherent purpose of the entire lease itself is to get gas that has value, and that gas, the gas that is ultimately used, we know it has value, and that's the reason it does, in fact, get used. We also know that under this particular case, you could harmonize the market value at the well lease language with the OLUG and the FOGLU clauses. It's very simple to do because all you have to do is say you pay net value on both sold and on used gas. Their argument that the market value at the well implicitly overrules or eliminates those other two express clauses is not the way construction and plain language textualism works. This particular court should hold that the text of the lease controls, not some extending of the precedent beyond where it has already been. That gets me to the San Antonio case that they submitted the 28-J on, I guess it's called InterVest. Did you want to respond to that? I'd be happy to respond to that in writing, I think, but I'm happy to respond to it now as well, Your Honor. With respect to the InterVest case, the trial court, of course, followed Randall and found exactly what we're asking this court to find. The appellate court, interestingly, reversed and followed the Carl Hall versus Hillcourt case below. It did a couple of things that we think are highly erroneous. One, we think it followed Piney Woods, which is a factual determination. Interestingly, it's a factual determination, I would call a split decision, if you will. In the first trial, the off-lease use of gas, the plaintiffs prevailed and were allowed to get royalty on the off-lease use of gas, but not on the processing at the plant, actually the treatment plant. That came in Trial 2, and they lost on the facts in Trial 2. So relying on a factual determination to make a legal determination, I think, is wrong in the first place. The second place is it was a split decision in Piney Woods. First trial went for the plaintiffs on this particular off-lease use of gas. The second trial went for the defendants, and both the Fifth Circuit decisions said that we basically are going to affirm what the trial court found, which is no great surprise because trial courts often get affirmed. The second thing they did, and I see I'm out of time, Your Honor, but I'm happy to let you deduct that from my paper. The second, I think, important point is that in InterVest, they relied on ARCO versus Holbein, the Court of Appeals. Please bring your argument to a close. I will do so, Your Honor. That particular opinion they relied on was rejected in Randall's at footnote 73. Thank you. Thank you, Your Honor. Jeff Oldham on behalf of, may it please the Court, Jeff Oldham on behalf of Hillcorp Energy Company. Dismissal under Rule 12b-6 was straightforward here based on settled Texas law and the specific pleadings in this case in which plaintiffs complain only about gas used off-lease, yet they failed to allege that any of that gas was used for any purpose other than post-production activities even after the district court gave them a third chance. Because post-production costs are fully deductible when calculating royalties under the controlling Texas law, plaintiffs allege no facts to support an underpayment claim based on the universe of gas at issue in this case. So if they used all the gas off-lease, then they would owe, if you used all the gas, you'd owe nothing? That's not our position. Our position is not and has never been that there is no royalty owed on gas used off-lease. That is not our position. Our position is that under clear Texas law for market value of the well leases, when gas itself is used as a post-production activity, it is a post-production cost that is itself deducted from the royalty base. Okay. Do you disagree with the really helpful illustration that Judge Ho gave earlier? 1A times per unit value times number of units, do you disagree with that in any way? I think that that general construct is right and I think then the way to understand how the deductions happen, you can do it either at the quantity or you can do it at the price. So for example, Piney Woods 4, when this court in Piney Woods 4 held that the plant fuel in that case was netted to zero, no further royalties were owed, what the court there said was that the quantity of gas reduced the supply of the gas and that's how you can get to a market value of the well. You can also do it by sort of doing the net back method of taking the market value downstream, backing out your post-production costs, getting your market value of the well dollar figure at the well, and then look at the entire universe of gas on which royalties are owed. I just don't understand why you don't have to pay a royalty on the units that were used on the way. Maybe you can help me with the hypo. Suppose I have an apple orchard and you have to pay a royalty on the market value of every apple produced by the orchard and it's supposed to be calculated at the times they're picked on the property, right there, and you put them in the bins or whatever, but they don't sell the apples right away and they get it, they put them in a truck and they've got people who are the pickers who are also the unloaders at the grocery store or whatever the place is that they're taking them to be sold, the farmer's market, okay, but on the way the pickers are hungry and they eat the apples on the way and they need to have sustenance because that's part of being able to be able to put them, haul them off, I don't want to belabor this too much, but why don't they have to pay royalties on the apples that they ate on the way, which were helpful to the production of the apple operation, but there's still apples that were picked at the tree. That's right. So to translate that to this case, royalties would be owed on all of those apples, but I have to add one point to your hypothetical, Texas law clearly says that you get to deduct the eating of those apples every single time, that's clear Texas law, and so they're not saying that they don't owe a royalty on that, but Texas law says that they get to deduct the apples, the value of the apples that they consumed along the way, that's the French case, that's the Texas Supreme Court's holding in the French decision, now there's a lot of different gas, sort of categories of gas at issue in that case, but when you look at the French decision, there was a 30% of the natural gas liquid that was used as an in-kind payment to the third party processor, and what the court held in that case, there was again other issues talking about whether the separation of carbon dioxide qualified as a post-production cost, after ruling that it did, the court said no net royalties are owed, that case is on point from the Texas Supreme Court, supporting our position here, and I don't think the court can rule for the plaintiffs in this case without running a the math here, if you accept the three variables that we talked about, is the following correct? You need to pay for the gas under variable three, these are part of the units, this is not on lease for use, this is off lease, you have to pay for it, your point, so I take it you agree that it falls into column three, your point is that you get a price deduction under column two, is that the point? That's correct, and again, you can almost draw this, and I can show you that you can do it either way, you can actually do it as a quorum. Well, but is it mathematically the equivalent? I take your point that, look, does it really matter whether we include it in three but take away from two, or just not put it in three at all, but I can see that the math is not going to be the same. I think, so the math is the same if you have the specific pleadings alleged in this case, which is 100% of the gas at issue, the universe of gas at issue in this case is gas used off lease, 100% of that was used for post-production activity, so this is not a case where you have different, you know, gas, some of which gets a deduction, some of it doesn't, in which you have to do a lot of math. Here you have 100% of the market value of the universe of gas at issue, is the royalty base on that gas, and 100% of the market value of that gas is also the amount of the deduction. That's why it nets to zero in this case. Now, this is different from some other cases, like Piney Woods 4, or the Energen cases, and a lot of the other cases that your honors have read, there's used gas at issue, there's sold gas at issue, there's fact issues that they're identifying about whether the costs were reasonable, none of that is at issue in this case, because the only gas that's at issue in the universe is used gas, all of which, based on the pleadings and the district court's rulings, are used for post-production activity. But why shouldn't they have to do the math? Why shouldn't we remand for the district court to do the math using the one-eighth of all gas produced methodology? Why shouldn't we remand for it? And then if you're right, you're right, and you owe zero damages, because I figured out . . . I mean, sometimes it will be a wash, but not every time, and I don't know that we know whether it's absolutely a wash here. On these pleadings, it's a wash, and that's what the Texas Supreme Court held in French. This court can't reverse and remand without running afoul of the French decision, where the court did not say that 30 percent of the NGLs were not sure how it'll go, we're going to remand for further determination. The court held, as a matter of law, that's a post-production cost. The value of the gas is, so the value of the gas is therefore deducted. That's also what this court held in the Piney Woods 4 case. But just to be clear, am I correct that you're not opposed to including it, including the gas that's used, you're not opposed to including it in Column 3, you're just saying, first, that it needs to be deducted under Column 2, and second, that at the end of the day, the numbers are a wash if you do that. Is that . . . That's correct, because 100 percent . . . So then what's the harm, hypothetically, what's the harm in sending it back other than just the litigation cost of having to do this at summary judgment rather than dismissal? Well, the harm is that under Rule 12b-6, the federal rules strike the balance of what a plaintiff has to do to get past the pleading stage. In order for them to allege facts showing their entitlement to relief on an underpayment claim, they have to allege there's some gas on which a royalty is owed greater than zero. They have not done that. They cannot get into the discovery phase of a case simply by speculating that some gas might be used for different purposes. Just to be clear then, even though the formulas are technically different under these two approaches, you're saying as a mathematical matter, and I'm not fast enough to think about it right this moment, but you're saying that as a mathematical matter, either formula will always result in the exact same bottom line dollar owed. In the narrow circumstances of this case, where the specific pleadings make clear that they are only talking about used gas, and 100% of that used gas is a post-production cost. That's what, when the case got to Piney Woods 4, that was the posture at that time. All the gas was a post-production cost, so the court said that the amount owed as a royalty is exactly equal to the royalty owner's share, and it . . . Just to be candid, because I'm not up on the math right now, what makes me just a little nervous is when you add numbers, it's X times Y times Z, and making Z bigger or smaller, and making Y smaller or bigger, that could very well matter in terms of the bottom line number. Not when 100% of the market value of the gas that you're talking about adding to the royalty base also is then the exact same . . . 100% of market value is the deduction. So . . . At the end of the day, it's the value of the gas. That percentage of the gas that's used up, whether you pay for it off the . . . I'm going to need to think about it more, because I think I see what you're saying. I just want to confirm what you're saying. The point is that when you look at the royalty base for the gas at issue, if 100% of it is a post-production cost, in French, other cases say that gas used in post-production activities is a post-production cost. If 100% of that market value of that gas is the royalty base being alleged, but 100% of that is a post-production cost, therefore it's the deduction, that's why the . . . You're saying it's the mathematical equivalence. If you put the one formula on one side, one formula on the other, in the middle is an equal sign. It's always going to net to zero in the specific circumstances where the allegations are made in this case. Again, that's what this court held in Piney Woods 4. That's what the Texas Supreme Court held in French. That's what Chief Judge Rosenthal held in the Fitzgerald case that involved the identical claim on the same lease language and the same allegations. What Chief Judge Rosenthal also pointed out there is that in this circumstance where all of the gas alleged is gas used in post-production activities, they have failed to allege any gas on which a royalty is owed greater than zero. And so in that circumstance, they have not pled fact showing their entitlement to relief on an underpayment claim. And so the harms of just allowing these cases to go to discovery is exactly the harms that Rule 12b-6 is meant to avoid. The damages will be the same. I'm sorry, let me rephrase. There will be no damages. Your point is cut off the litigation now because there will be no damages. What it will mean by enforcing Rule 12b-6 and the limits it puts, which it strikes the balance among the various interests by saying that you have to be able to plead fact showing your entitlement to relief. And if this Court were to reverse and remand and just say that you get discovery and the math will work itself out when it's very clear right now from the pleadings that it's 100% minus 100%. Okay. I don't think that it's clear, so that the pleadings, the pleadings certainly don't say that. Well, I think that... They don't, his pleadings do not say, and it's a wash, and blah, blah, blah. I mean, you have to... They don't say it's a wash, but what they do say is that they are only complaining about used gas. That's clear from like, I think it's the first footnote, that they're not talking about sole gas, they're talking only about used gas. They pled that that used gas off lease is typically used for post-production. The district court interpreted that as saying, okay, that's the typical use, then you need to plead something else. They couldn't do that, and they've not even challenged that ruling on appeal, that they couldn't plead a non-post-production use. So as this case comes to this court, it's clear that 100% of the gas at issue is used gas that's used in post-production activities. That does lead to that circumstance, that the market value at the well of that gas forms the royalty base, and the same market value at the well of that gas is a deduction, and that nets to zero. And to go back to the Rule 12b-6 of the problem about allowing a case like this to go forward, is that you will then have a circumstance in which plaintiffs and royalty owners can endlessly file lawsuits against the lessees, speculate that something might not be paid, and now they get costly and harassing discovery. Why is that? Why can't you just send them a thing every period that says, and it was used, and this is a wash, and therefore we owe nothing? Why is that? I don't understand why you're going to have these endless lawsuits. I mean, you have to document it anyway on these little reports. You could document that very line on the report. According to the allegations by plaintiffs, that check stub relates only to sold gas and doesn't relate to used gas, and I can't speculate outside the law. Right, but you could add a used gas column pretty easily if it's really 100% is used, and you know what it was, what the total amount that you got was, and then you know any that didn't make it to the actual distribution network, it's that minus the other. So it's not much of an add. I don't understand that you're going to have this endless, the parade of horribles to me is not a good argument. It's either in there or it's not, and so you eschew any claim that they have that any double dipping is going on in this, that because they're using the gas as the in-kind payment and lowering the cost at the expense of the royalty or in order, we think that's totally false. Texas law allows use of gas to be consumed in post-production activities and allows for deduction. That is correct. Right, it can use it, but then it can't also deduct that gas from the number of units on which it's paid a royalty. It still has to pay a royalty on that unit. And our position is consistent with that, that you are paying a royalty on that gas, but you are allowed to take the deduction, but in this case, were the pleadings raised no fact issues about the reasonableness of costs or how the math works, because we're only talking about a narrow universe of gas. Show us whether you paid the royalty or not, and then if you did, then we all, we go home because it's a no damage. I mean, if it really is no damages, I don't understand. I can't speculate outside the record why, I mean, the check stubs according to the record relate only to sold gas, and I can't speculate why there's other gas outside the record, or why used gas is not accounted for in some other way, but what I can tell you with respect is that we have this lawsuit, we have the Fitzgerald lawsuit, we have the Enterbest lawsuit. So I think you can see that if Texas law is changed to where now you don't simply, like on the 30% of NGLs, as that court squarely held, if you don't sort of just do that and instead allow wide-ranging discovery and that sort of thing, it will lead to a proliferation of lawsuits. And so I do think there's real harm. Well, maybe we should certify and say, does Randall affect this longstanding practice or not? And I do want to speak to Randall, because I think Randall, as Judge Ellison, Chief Judge Rosenthal, and other courts have all held, Randall is a red herring, because Randall did not involve a market value at the well lease. It used a free use on the lease clause, with language nearly identical to the language in the lease at bar. That's what Randall's about. But in our case, you don't get to the free use clause, because we are first arguing that the market value at the well lease allows us to deduct post-production costs. And the first ruling in the Randall case by the Texas Supreme Court was whether or not that case involved a market value at the well lease or a gross proceeds lease. The court held it did not have a market value at the well lease before, because of the interplay between the addendum and the printed lease form. That's why then the next issue for that court is, okay, does the free use clause allow these other clauses to be used? We don't get to that second issue in this case, because unlike in Randall, there is a market value at the well clause that undisputedly governs, and that allows deduction of post-production costs, including the full value of gas that's used in post-production activities. And so you just don't get to the free use clause. You don't get, well, there's no question that the free use clause here uses the same relevant language as the Randall. And the gas company can't use extracted gas off the premises for free. And so then the question is how to calculate the value of the gas on which the loyalty is owed. We get right back to the same calculation. That's correct. In doing the calculation under market value at the well lease, you get to deduct post-production costs. And in a case like this case is alleged to be, where 100 percent of the market value of the universal gas at issue is both the royalty base and the deduction, because it's all being used and consumed in post-production activities, as a matter of law, like the court held in French and in other cases that we've cited, the royalty nets to zero. And again, that's also this way. So just for what it's worth, here's the formula that I'm looking at, and maybe I shouldn't be doing it this way. I've got two different formulas that you think equal the same, right? So on the left side, I've got one-eighth times parentheses, some blank number that represents the post-production market price. And we're backing out. So it's minus A. We're backing out whatever it is that the post-production costs reflect. That is times the total number of units. So you follow me? Correct. Yes, I am. All that you're saying should be equal to one-eighth, that's going to be a wash, times just the post-production market dollars per unit. There's no subtraction because we're doing it the other way, right? Times the total number of units minus the used gas. That's correct. Those should come out the same. If I'm understanding... Yeah, I think we're on the same page. You're saying that, and I guess what I'm telling you is it's not intuitive to me based on just staring at this and my limited brain power right now. It's not intuitive to me why those are necessarily equivalent. I take it your argument is, would you look at it real hard? And can I give you numbers, and I may not have time to finish this, but if you have 100 MCF, and I'll leave the one-eighth to the side for a moment. One-eighth is a wash. If you have 100 MCF at the well, and let's just say that 20 MCF is used as a post-production cost, so 80 makes it to market. Let's just assume that there is a $10 market price, so at downstream it's $10, right? So you now have 10 times eight, 800, that has made it to market. Okay? So when you then go back and pay royalties on all 800, go divide 800 by 100 to get your market price at the well, which is $8. You now have made your deduction, you have a market value at the well price of $8, eight times whatever the royalty base is, let's just call it 10% to be, you know, then you've got that, right? Okay, so, I'm sorry, you need to do eight market value at the well times the 100, 800. Times 100. Then you get, let's just say a 10% royalty, your royalty is $80. Now I think if I'm understanding correctly the way you did it the second time, you have the 100, you have the 20, 80 gets to market, right? So let's take the 100 times the 10, 1,000, right? You had gas that you could have sold for $1,000, that's 1,000, right? Then you have to go deduct the cost, which is 20 times 10, 100 minus 200 is 800, and you're back to the same number, what's your royalty on that? 80. I think it— That's not what the district court ruled. The district court didn't rule that it's—if that had been done and all the math done, but that's not what we have here. Well, I think this math is illustrating what the Texas Supreme Court held in French, and it's illustrating what this court held in Piney Woods for, which is when you have gas that is itself consumed as a post-production activity, and 100% of the value of that is the royalty base, and 100% of the value of that is the deduction, there's no net royalty as a matter of law. And so we would respectfully ask this court to honor what the Texas Supreme Court has held in this area and affirm. Did you follow the equation I was trying to do, or am I complicating it? I think I did, Your Honor. Do you have a reaction? I'll see if I can address it in the midst of this argument here. Let me start out with the French case, because that's the case that they claim Texas law really allows them to— Maybe more persuasive, you would answer my question. With respect to the math, his idea is that the Texas law allows the deduction of used gas, and that's not what French says at all. French is a tertiary recovery case where the issue was what was production cost and what were post-production costs. It has nothing to do with off-lease use of gas. You can answer however you want, but I've asked a math question, not a case law question. I'm not sure I followed the math question enough. If you don't mind repeating, I'm happy to— It may take up all your time. Go ahead. I'm sorry, Your Honor. The math question to me is a simple math question with respect to gross minus post-production cost equal net value. And so what goes into the post-production cost number is the real question. And we all know what the post-production cost numbers are. They are cost numbers. They are compression. They are processing. They are charges of fees and expenses. They are not used gas, which is the reason I provided this exhibit to show— Conceptually, what they're saying is if you want to put the used gas in Column 3, fine, but we're just going to get it out of Column 2. So one taketh, one giveth away. It's all the same. You think it's the same. I understand their argument is we both get it deducted and added, and therefore it's— It's a wash. They're saying it's a wash. That's their argument. I don't need to waste time with summary judgments. My argument is that it's not included. It's not part of post-production cost. They've never gotten to deduct it. Your point is, A, it has to be included in Column 3, and it should not be deducted out of Column 2. That's correct. Why not? And the reason— Isn't this a— Because use is not a cost. Use, gas— Well, but it's— Well, let me ask you this. What if instead of using the gas from your well and your client's wells, they say, fine, we're going to get gas from some other source. Then we would— Do we get to deduct that? No. Do we get to deduct that? Do they get to deduct that? No, they don't get to deduct that. There's nothing in the lease that says they get to. That's not a post-production cost? Yeah. So if they get it from someplace else, there's nothing in our lease that says you get to deduct that. If it's an expense, they get to deduct it. If they don't get to deduct something, let's say they got electricity to run their compressor or their processing plant or their propane, unless the lease says that they get to deduct that, they don't get to. Okay. So this is not a math problem. This is— That is not, in your view, the type of post-production cost they can deduct? Yeah. So this particular lease is very careful, and if you look back at the Burlington case, it specifically says that the parties can define in their lease what is a post-production cost. Well, that didn't happen here, so you would look at post-production costs. What are costs? You won't look in the dictionary and see use as a cost. You will look at expenses as a cost or costs that are— But do you agree that they need this gas as part of their post-production process? I don't— Could they succeed in improving the value of the gas without undertaking these expenses? Yeah. So the actual used gas doesn't improve anything. The used gas, of course, is consumed, and it doesn't also improve the gas that goes on. It's only the service that ever improves gas going forward. It's not something that fuels it. So are you saying the cost of the used gas is just—it should be borne by the producer? Absolutely. The producer gets all the gas up out of the hole, and it's the one who can decide how it's going to be done. It can either sell it all, it can use it all, or it can use 10 percent or whatever. And what's the best language in the lease that says that this should not be included in the production cost? The best language in the lease is the OLUG clause that says that you have to pay royalty on gas that's used. So there's nothing else that says on post-production costs, some other post-production— You're saying OLUG means you have to pay royalty on what's used. I hear the other side saying, fine, we're willing to do that, but we get to deduct post-production costs. You need to answer that part. But they don't because the lease specifically says you don't get to deduct this. You have to pay royalty on it. The express language of the lease says don't deduct this, pay royalty on it. Totally different. Right, but we need— They're saying both. The post-production definition says that this isn't a legitimate post-production cost. That's what the problem—I mean— Therein lies the problem, and the French case, as I indicated, I'm sure you'll read it, has nothing to do with post-production costs, doesn't go into the OLUG clause or the FOLU clause. I see I'm out of time. The Johnson case is the one that really covers this case from the Fifth Circuit. We'd ask you to— Thank you, sir. Are you able to— That case will be submitted. Mr. Chavez.